# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Daniel Bustamante, | No. CV 07-0940-PHX-DGC (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Hector Gonzalez, et al. | |
| Defendants. | |

Plaintiff Daniel Bustamante filed this civil rights action under 42 U.S.C. § 1983 against various employees of the Phoenix Police Department. (Second Amend. Comp., Doc. #54.) The parties cross-move for summary judgment.[1] (Doc. ##106, 108.) The motions are fully briefed. (Doc. ##113, 114, 116, 119.) For the reasons that follow, the Court will deny Plaintiff's motion, grant Defendants' motion, and terminate the action.

**I. Background**

Plaintiff's claims arose during the course of his arrest on or about February 16, 2007, during which officers deployed a K-9 and fired a sage gun, striking Plaintiff in the groin. (Doc. #54.) Count I alleges that, in violation of the Fourth Amendment, Defendants used excessive force during the arrest and that this resulted in the loss of Plaintiff's testicle and numerous dog bites. Count II alleges a state-law claim for negligent use of force.

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond. (Doc. #111.)

Plaintiff moves for summary judgment on the ground that Defendants violated Plaintiff's Fourth Amendment rights when they violated Phoenix Police Department use-of-force Orders on the use of sage guns and K-9s. (Doc. #106.) Defendants – Gonzalez, Norton, Roman, Maish, Roberts, Redmon, Kliewer, and Poole – move for summary judgment on the grounds that (1) Plaintiff did not file a proper Notice of Claim as to his state law claims, and so those claims must be dismissed, and (2) Defendants are entitled to qualified immunity. They also assert that no punitive damages are available because punitive damages are not recoverable against a municipality or a government official sued in his or her official capacity. (Doc. #108.)

**II.    Legal Standard – Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material – a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) – and that the dispute is genuine – the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively

in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant must "be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**III.    Count I – Federal Claim**

    **A.    Legal Standard**s

"'[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment 'reasonableness' standard.'" Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The Fourth Amendment does not prohibit the use of reasonable force. Tatum v. City and County of San Francisco, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. See also Tatum, 441 F.3d at 1095; Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003). The Court must balance the nature and quality of the intrusion against the countervailing governmental interests.

In determining whether an officer acted reasonably under the Fourth Amendment, the

Court considers the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The court must balance the nature and the quality of the intrusion on the individual's Fourth Amendment interests against the government interests at stake. Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Whether the amount of force used was reasonable is usually a question of fact for the jury. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Summary judgment should be granted sparingly. Bell v. City of Seattle, 395 F. Supp. 2d 992, 998 (W.D. Wash. 2005).

**B.    Parties' Contentions**

In support of his motion, Plaintiff submits his declaration (Doc. #106), Police Reports (id., Ex. A), Phoenix Police Department Use of Force Operations Order 1.5 (id., Ex. B, D, E, F), a use of force report (id., Ex. C), Urology Consultation Report (id., Ex. G), hospital reports (id., Exs. H-K), and his Statement of Undisputed Facts and argument (id., PSOF).

In support of their motion, Defendants submit their Statement of Facts (Doc. #109, DSOF), Police Reports (id., Exs 1-3), Fire Department EMS Incident Report (id., Ex. 4), Medical Report, dated February 16, 2007 (id., Ex. 5), Urology Consultation Report (id., Ex. 6), hospital report, dated February 17 (id., Ex. 7), excerpts from the deposition of Kumash Patel, M.D., September 10, 2009 (id., Ex. 8, Patel Dep.), the deposition of Stephen Ponas, August 20, 2009 (id., Ex. 9, Ponas Dep.), Plaintiff's Plea to Indictment in Maricopa County Superior Court (id., Ex. 10), Notice of Claim, stamped received August 9, 2007 (id., Ex. 11), use-of-force opinion, dated July 14, 2009 (id., Ex. 12), excerpts form Plaintiff's deposition, April 3, 2008 (id., Ex. 13, Pl. Dep), and a transcript dated July 20, 2009 (id., Ex. 14).

**1.    Motions**

Plaintiff asserts that Gonzalez stated in his report that, while Plaintiff was lying down and holding the K-9, Gonzalez walked to about six or eight feet from Plaintiff and shot one round into Plaintiff's thigh. (Pl. Decl. ¶ 4.) Plaintiff contends that under Use of Force policy, "optimal ranges for the stun bag shot gun are between 5 and 20 yards, if possible, officers should consider other force options at less than 5 yards." (Id. ¶ 5.) Plaintiff also

contends that the police report stated that his level of resistence was "active aggression," but under the Use of Force policy "active aggression" is defined as physical actions of assault. Plaintiff argues that Gonzalez admits that Plaintiff was lying down. (Id. ¶ 6.) Plaintiff asserts that the policy states that "canines may be used to search for or apprehend felony suspects when public or officer safety is threatened sufficiently to justify this level of force." Plaintiff alleges that at the time the K-9 was used, he was in the attic of an unoccupied residence with nowhere to escape and was not a threat to the public or officers because he was unarmed. (Id. ¶ 8.) He also claims he was tasered, which, he alleges, was not reported because he was shot in the groin – a non-target area. (Id. ¶ 9.)

Plaintiff argues that the undisputed facts show that he was the victim of three incidents of excessive force. First, Gonzalez used a sage shot gun on Plaintiff, who was unarmed, laying on his back (nonthreatening) and standing too close to use the gun based on the "Department policy for the use of force." (Doc. #106, PSOF ¶ 2.) Second, Norton deployed his K-9 on Plaintiff, who was not fleeing and not a threat because he was unarmed, and Norton "did so against Department Policy for the use of force." (Id. ¶ 3.) Finally, Plaintiff asserts that a taser was used and never reported. (Id. ¶ 4.)

In their motion, Defendants assert that on February 16, 2007, at approximately 10:12 a.m., City of Phoenix police officers responded to an emergency call of a burglary in progress. (Doc. #109, DSOF ¶ 1.) When officers arrived at the scene, the suspect (Plaintiff) had fled the residence and was believed to be running through the neighborhood. An officer saw the suspect running toward a vehicle. (Id. ¶¶ 2-3.) Despite repeated verbal commands to get out of the vehicle and surrender, Plaintiff backed up the vehicle. (Id. ¶ 4.) Another officer arrived and activated his overhead lights and approached Plaintiff. (Id. ¶ 5.) Plaintiff then lost control of his vehicle and slammed into a parked car. He fled on foot and broke into another residence. (Id. ¶ 6.)

Officers Gonzalez, Norton, Roman, Maish, Roberts, Kliewer, and Poole – from the tactical support bureau, then known as the special assignment unit (SAU) – responded to a call to assist. (Id. ¶¶ 7-8.) When they arrived at the address, they believed Plaintiff was

-5-

hiding in the attic. (Id. ¶ 9.) They entered the home and called out to Plaintiff to identify himself and come out or they would send in the K-9, Jake, to locate him. (Id. ¶ 10.) Plaintiff failed to identify himself of his location, so Norton sent his K-9 into the attic. (Id. ¶ 11.) Jake located Plaintiff, and they both fell through the ceiling onto the bathroom floor. (Id.) Defendants assert that Plaintiff was grabbing Jake by the throat and using him as a shield from the officers. (Id. ¶ 12.) Defendants allege that they again told Plaintiff to surrender and take his hands off Jake, but Plaintiff did not do so. (Id. ¶ 13.) Therefore, Gonzalez fired his sage gun and, when he did not get a response from the first round, fired again. Plaintiff then let go of Jake. (Id. ¶ 14.) Although Gonzalez was trying to hit Plaintiff in the thigh, one of the rounds struck Plaintiff in the groin. (Id. ¶ 15.) Jake secured Plaintiff by biting him on the leg. (Id. ¶ 16.) When Jake was removed by Norton, the officers were able to place Plaintiff in handcuffs and arrest him. (Id.)

Phoenix ETS was called to the scene and Plaintiff was taken to John C. Lincoln North Mountain Hospital. (Id. ¶¶ 17-18.) He was evaluated by trauma surgeon Dr. Kumash Patel, and urologist Dr. Stepehn Ponas. (Id. ¶ 19.) An officer advised Plaintiff of his Miranda rights and asked him why he was hiding in the attic. Defendants assert that Plaintiff replied that he was hiding from the cops. (Id. ¶¶ 20-21.) On February 18, Dr. Ponas performed surgery and removed Plaintiff's left testicle. (Id. ¶¶ 22-23.)

Defendants assert that an unknown person reported to Patel and Ponas that Plaintiff had been shot with a taser, which is why the medical reports indicate that the injury was "electrical," but when the doctors were deposed, they agreed that the injury was consistent with blunt force trauma. They indicated a taser injury because that was what was reported to them. (Id. ¶¶ 24-25.) Defendants contend that Plaintiff was not tasered; instead, a sage gun was used. (Doc. #108 at 3.)

Plaintiff was charged with Burglary, Misconduct Involving a Weapon, Unlawful flight from a Law Enforcement Vehicle, Criminal Trespass, and Cruelty to Animals. He pled guilty to all charges on January 23, 2008. (Id. ¶ 26.) Plaintiff was originally deposed on April 3, 2008, at which time he refused to answer questions regarding the incident on the

ground that he was trying to withdraw his guilty plea. Defendants assert that on July 20, 2009, the court denied Plaintiff's request to withdraw his plea. At his rescheduled deposition, Plaintiff still refused to answer questions about the incident. (Id. ¶ 41.)

### 2. Responses

In their response to Plaintiff's motion, Defendants argue that their actions were reasonable because, at the time of his arrest, Plaintiff had broken into two homes, stolen a firearm from the first home, and was hiding in the attic refusing to identify himself. He was given the opportunity to surrender and was informed that the K-9 would be sent to the attic if he did not. Plaintiff refused to comply with the officers' orders even after he and the K-9 had fallen through the ceiling onto the bathroom floor. Plaintiff used the K-9 as a shield and was choking him. Defendants argue that Plaintiff was a danger to himself and Defendants.

Defendants also submit a Controverting Statement of Facts (Doc. #115, DCSOF). Plaintiff cites to the Department Policy referring to the use of a stun bag shot gun, but Defendants assert that Gonzalez used a sage gun, which is a different weapon. (Id. 5.) They assert that Plaintiff was actively aggressive when he ignored commands and when he choked the K-9 and used him as a shield. They submit Use of Force Operations Order 1.5. and a Use of Force Report, dated November 7, 2007, and "Witness Information."

In his response to Defendants' motion, Plaintiff submits a second declaration in which he asserts that Defendants had the "discretion or option to use force or not to use force," they used force that was not recommended by policy, and they excluded the use of the taser from their reports. (Doc. #113 at 4.) Plaintiff does not object to Defendants' evidence.

### 3. Replies

In his reply, Plaintiff assails the credibility of Dr. Patel, arguing that although Patel stated in deposition that the injury was from blunt force trauma, Patel wrote in his pre-operative and post-operative diagnosis that the injury was electrical. (Doc. #119 at 2.) Plaintiff complains that Defendants have failed to place the entire deposition in the record, which he claims would show a contradiction. Plaintiff asserts that the cover-up of the taser shows that the officers have not been truthful and neither Gonzalez nor Norton submitted

-7-

affidavits. (Id. at 3.) He contends that he pled guilty in his criminal case through "implicit coercion" and that his attorney rendered ineffective assistance of counsel because he never attacked the officers' credibility. (Id.)

In their reply, Defendants argue that Plaintiff failed to submit a controverting Statement of Facts as required by Local Rule 56.1 and assert that their Statement of Facts should be deemed admitted. (Doc. #116 at 1-2.)

**C. Analysis**

The Court will deny summary judgment to Plaintiff on the Fourth Amendment claim because he fails to establish that Defendants used excessive force. The Court will grant summary judgment to Defendants on the Fourth Amendment claim because Defendants have submitted evidence showing there is no dispute of fact as to the reasonableness of their actions under the circumstances, and Plaintiff fails to establish a dispute of material fact sufficient to defeat summary judgment.

**1. Preliminary Issues**

Although Plaintiff submits no controverting statement of facts, the Court declines to deem Defendants' Statement of Facts as admitted. *Pro se* pleadings are liberally construed. Haines v. Kerner, 404 U.S. 519 (1972). Nevertheless, Plaintiff does not dispute the facts set forth by Defendants. Instead, he argues that Defendants' actions violated Police Department policy because the officers deployed the K-9 even though Plaintiff was not engaged in "active aggression," he was not a threat to the police because he was not armed, he was not fleeing, he was lying down at the time he was shot, and the sage gun was used at too close a range.

The Court also finds that Plaintiff has submitted insufficient probative or admissible evidence to show that Defendants tasered him. Defendants' evidence shows that the statements in the medical records regarding tasering were from an unknown source. Both Drs. Patel and Ponas testified at their depositions that Plaintiff's injuries were consistent with blunt force trauma, not electrical injuries, and explain that their notations in the medical records regarding tasering were based on the hearsay statement. (Doc. #109, Patel Dep.

9:24-25, 10:1-3, 11:17-25, 12:1-3; Ponas Dep. 7:7-25, 8:12-21.) Plaintiff challenges their credibility but offers no proof of his own that he was, in fact, tasered. Plaintiff's mere suggestion that the deposition testimony was perjured or not credible is insufficient to defeat summary judgment. See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 81 (5th Cir. 1987).

### 2. Fourth Amendment

A Fourth Amendment analysis of excessive, non-deadly force requires a court to balance the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1051, 1056 (9th Cir. 2003), citing Graham, 490 U.S. at 396. The objective- reasonableness inquiry under Graham is a three-step analysis. Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003); see also Bryan v. McPherson, --- F.3d ----, 2009 WL 5064477, at *2-9 (9th Cir. Dec. 28, 2009). First, the court must evaluate the type and amount of force used. Next, it must assess the importance of the governmental interests at stake by considering the factors set out in Graham – the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest. Finally, the court must balance the "gravity of the intrusion on the individual against the government's need for the intrusion . . . ." Miller, 340 F.3d at 964. The need for force is at the heart of Graham. Drummond, 343 F.3d at 1057 (citation omitted). Where there is no need for force, any forced used is excessive. Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000), vacated and remanded on other grounds, County of Humboldt v. Headwaters Forest Def., 534 U.S. 801 (2001).

#### a. Type and Amount of Force

In Miller, the Ninth Circuit concluded that use of a K-9 was a serious intrusion on the plaintiff's Fourth Amendment interest. 340 F.3d at 964. In that case, the evidence showed that the force used was exacerbated by the duration of the dog bite – between 45 and 60

-9-

seconds. Id. at 961. In Bryan, the court held that tasers and similar devices constitute an intermediate, significant level of force that must be justified by "'a strong government interest [that] compels the employment of such force.'" Id. at *4, citing Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir.2003). Although there is no evidence here regarding the duration of the dog bite and little evidence regarding the capabilities of a sage gun, the Court will assume that use of a K-9 and sage gun are significant levels of force that must be justified by "a strong government interest [that] compels the employment of such force."[2]

### b. Government's Interest – Graham factors

Next, the Court considers the government's countervailing interests, especially in light of the Graham factors. In Miller, the court found that the government has an undeniable, legitimate interest in apprehending criminal suspects and that the interest is even stronger when the criminal is suspected of a felony, holding that such a situation strongly favors the government. 340 F.3d at 964. Compare Drummond, 343 F.3d at 1057 ("less-than-overwhelming" government interest where there was no underlying crime at issue – a neighbor called police because the plaintiff was acting in an emotionally disturbed manner); Bryan, 2009 WL 5064477, at *7 (traffic violations generally will not support the use of significant force). Here, it is undisputed that Plaintiff was suspected of the serious crime of residential burglary. This factor weighs in favor of the government.

The most important Graham factor is whether a suspect posed an immediate threat to the safety of the officers or others. Miller, 340 F. 3d at 964; Bryan v. McPherson, --- F. 3d --- 2009 WL 5064477 (9th Cir. Dec. 28, 2009). In Miller, the court held that, from the officer's viewpoint, the plaintiff posed an immediate threat to his safety. 340 F.3d at 965. The court noted that the officer knew Miller had defied orders to stop and that he was a felony suspect. In addition, the officer knew Miller was hiding in the woods, but the officer did not know where, and he did not know if Miller was armed. The officer knew that Miller

---

[2] A sage gun shoots less-than-lethal rubber bullets. See Fisher v. City of San Jose, 509 F.3d 952, 956 (9th Cir. 2007).

remained defiant because he ignored the officer's warning that he was about to release the police dog. Id. The court found these and other factors to be "objectively menacing" and to entitle the officer to assume that Miller posed an immediate threat to his safety and the safety of others. Id.

Here, the evidence shows that Defendants were called as part of a back-up response after Plaintiff fled the scene of the burglary. They knew he was hiding in the second house, but they did not know where, and they knew he did not respond to verbal commands to surrender even after they told him they would send in the K-9. Plaintiff claims that he posed no threat because he was unarmed, but the police reports show that he was in possession of a handgun when arrested. (Doc. #109, Ex. 1, Police Report of Philip Steenstra at 6.) Plaintiff later pled guilty to a weapons charge that occurred on the date of the incident. (Id., Ex.10.) And even if the Court assumes that Plaintiff was not armed, he offers no evidence that Defendants knew that at the time. Compare Bryan, 2009 WL 5064477, *5 (plaintiff dressed only in tennis shoes and boxer shorts); Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir.2001) ("Deorle was wearing no shirt or shoes, only a pair of cut-off jeans shorts. There was nowhere for him to secrete any weapons.").

In addition, the Court rejects Plaintiff's argument regarding the Departments' use-of-force policy on K-9s. Although a police department's guidelines may be considered when evaluating whether a particular use of force was reasonable, such guidelines are not dispositive. See Drummond, 343 F.3d 1059. Moreover, the guideline in question here did not prohibit use of the K-9 under the circumstances. The Policy states that K-9s may be used to search for or apprehend felony suspects when public or officer safety is threatened. (Doc. #115, Operations Order 1.5 at 10.) Plaintiff refers only to the definitions of the types of resistance, which include active aggression – "[p]hysical actions of assault." (Doc. #106, Ex. D, Operations Order 1.5 at 1.) Plaintiff's argument that he was not engaged in "active aggression" is nothing more than a dispute over the characterization of his conduct. The policy to which he refers does not clearly prohibit Defendants' conduct. The fact is that Plaintiff was suspected of serious felonies, was hiding in an attic, refused to respond to police

commands, and might have been armed. Use of a K-9 to locate and apprehend him clearly was reasonable. To suggest that the officers could not use the dog, and instead were required to enter the attic and expose themselves to harm, is to defy all standards of reasonableness. The Court finds that, as in <u>Miller</u>, this factor weighs heavily in favor of the government as to the use of the K-9.

In addition, the Court must consider the use of the sage gun. Plaintiff asserts that he was lying down when Gonzalez shot him and that use of the gun violated Department policy. The Court rejects Plaintiff's characterization of himself as "lying down" at the time he was shot. If Plaintiff was on the floor, it was because he had fallen through the ceiling, along with the K-9 and was now on the bathroom floor, with the dog between him and the officers. It is undisputed that he did not let go of the dog as instructed. Although the Department policy states generally that officers should consider other force options at less than 5 yards, the 5 to 20 yard range is for a stun-bag shotgun, not a sage gun. (Doc. #115, Operations Order 1.5 at 10.) The evidence does not show a range for the sage gun. The policy lists legs as a primary target and instructs officers to anticipate firing follow-up shots if the first shot misses or is not effective. (<u>Id.</u>) Plaintiff has not established that Defendants violated Department policy on the use of force. Moreover, the Fourth Amendment does not require that officers use the least amount of force necessary. <u>Mattos v. Agarano</u>, --- F.3d ---, 2010 WL 92478, at *5 (9th Cir. Jan. 12, 2010) (citing <u>Scott v. Henrich</u>, 39 f.3d 912, 915 (9th Cir. 1994)). Plaintiff had not responded to the officers' commands, he and the dog had fallen through the ceiling, the officers still did not know if he was armed, he refused to let go of the dog when commanded, and the dog was obscuring the officers' view of Defendant and their opportunity to control his actions. Given this situation, considerations of officer safety weigh heavily in favor of the government as to the use of the non-deadly sage gun.

The third <u>Graham</u> factor – whether Plaintiff was actively resisting officers or attempting to flee – also weighs in favor of the government. When the force was used in this case, Plaintiff was evading arrest by hiding and refusing to surrender. <u>See</u> <u>Miller</u>, 340 F.3d at 966-67.

1      **c.     Balancing the Interests**

The process of balancing Plaintiff's and the government's interests must be undertaken "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Here, the force used was significant, but the government's interests were also great. Although police need not always show that they attempted less forceful means to secure a suspect, such a showing can be relevant to the reasonableness of the force ultimately used. In Miller, the Ninth Circuit noted that the officers had used several less intrusive means to apprehend Miller before using the dog: they signaled him with vehicle emergency lights and siren, pursued him in a police car, pursued him on foot, and audibly warned him to surrender or be chased by the dog. 340 F.3d at 966. Under those circumstances, using the dog was "well suited to the task of safely arresting Miller." Id.

Here, the undisputed evidence shows that officers used several less forceful means to apprehend Plaintiff. They commanded him to stop when fleeing, used police lights to signal their presence, commanded him to identify himself and surrender while he was hiding in the attic, warned him that the dog would be used if he did not comply, and commanded him to release the dog after he and the dog had fallen through the ceiling. Plaintiff refused to comply with any of these commands, and the officers were unable to subdue and restrain him until they had used the dog and shot Plaintiff with the sage gun. An arrest is not complete until the individual's liberty of movement is interrupted and restricted by officers making the arrest. State v. Sanders, 575 P.2d 822, 825 (Ariz. App. 1978). As in Miller, the officers' actions in this case were well suited to the task of safely arresting Plaintiff.[3]

---

[3] These facts are far different from Bryan, where it was undisputed that the plaintiff was unarmed, leveled no physical or verbal threat against the officer, and was standing, without advancing, fifteen to twenty-five feet away from the officer. 2009 WL 5064477.

1  Plaintiff has failed to establish that Defendants violated his Fourth Amendment rights, and Defendants have established that their conduct was reasonable under the circumstances.

### d. Qualified Immunity

In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court mandated a two-step process for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry." The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. Id. If so, a court would turn to the "qualified immunity inquiry" and ask if the right was clearly established at the relevant time. Id. at 201-02. If a plaintiff's allegations do not establish a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. In Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009), the Supreme Court held that the Saucier procedure is not an inflexible requirement; judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. Because Defendants have established the reasonableness of their conduct, the Court need not consider the remainder of the qualified immunity analysis. The Court will grant summary judgment to Defendants on the Fourth Amendment claim.

## IV. Count II – State Claim

### A. Parties' Contentions

#### 1. Defendants

Defendants assert that the Notice of Claim filed by Plaintiff on July 31, 2007, did not list any officer individually. Instead it referred generally to the Phoenix Police Department. (Doc. #108 at 5.) They argue that this does not comply with the requirements of Ariz. Rev. Stat. § 12-821.01. They assert that a claimant must give notice to both the public entity and the public employee. (Id., citing Johnson v. Superior Court, 763 P.2d 1382 (Ariz. Ct. App. 1988); Crum v. Superior Court, 922 P.2d 316 (Ariz. App. 1996)). Defendants also note that the statute requires litigants to include in the notice "a specific amount for which the claim

can be settled and the facts supporting that amount." Ariz. Rev. Stat. § 12-821.01(A). Defendants contend that Plaintiff's state law claim must be dismissed because a claim that does not comply with the statute "is barred and no action may be maintained thereon." Ariz. Rev. Stat. § 12-821.01(A); Deer Valley Unified Sch. Dist. , No. 97 v. Houser, 152 P.3d 490 (Ariz. 2007). Defendants attach a copy of Plaintiff's Notice of Claim. (Doc. #10, Ex. 11.)

### 2. Plaintiff

Plaintiff asserts that his Notice of claim did not contain names of officers because their identities were not disclosed until Plaintiff received copies of the police report. He asserts that the public entity still investigated the claim. (Doc. #113 at 3.) He contends that the statute requires that the Notice be filed with the entity or employee. (Id.) He also asserts that he included an amount for which he would settle and that the only requirement is that he file the notice within 180 days; other deficiencies do not bar the claim. (Id. at 3-4.)

### B. Analysis

The Court will grant Defendants' motion and dismiss the state law claims. Plaintiff does not dispute that he did not file claims as to Defendants.

Arizona's Notice of Claim statute provides that:

> Persons who have claims against a public entity or a *public employee* shall file claims with the person or persons authorized to accept service for the public entity or *public employee* as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or *public employee* to understand the basis upon which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

Ariz. Rev. Stat. § 12-821.01(A) (emphasis added).

Contrary to Plaintiff's argument, the Arizona Court of Appeals has held that "§ 12-821(A) unambiguously provides that both public entities and their employees are entitled to notice of claims against them." Johnson, 763 P.2d at 1384; Crum, 922 P.2d at 317. "To read § 12-821(A) as [Plaintiff] argues would render the words 'public employee' meaningless." Johnson, 763 P.2d at 1384. In addition, the Arizona Supreme Court has held that a claimant must file a *valid* notice of claim within 180 days or the claim is barred. Deer

-15-

Valley Unified Sch. Dist. , No. 97, 152 P.3d at 496. In dismissing a plaintiff's state law claim against a public employee for failure to serve that employee, this Court recently concluded that "compliance with the substantive terms of Arizona's notice of claim statute is not susceptible to the theories of actual notice, substantial compliance, or waiver for impossibility." Nored v. City of Tempe, 614 F. Supp. 2d 991, 998 (D. Ariz. 2008). Here, it is undisputed that Plaintiff did not file a Notice of Claim against any Defendant, and Plaintiff's state law claims are, therefore, barred.

The Court need not consider Defendants' remaining argument. Because no claims remain, the Court will terminate the action.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Summary Judgment (Doc. #106) and Defendants' Motion for Summary Judgment (Doc. #108).

(2) Plaintiff's Motion for Summary Judgment (Doc. #106) is **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. #108) is **granted.**

(4) The claims are dismissed with prejudice and the action is terminated. The Clerk of Court must enter judgment according.

DATED this 28th day of January, 2010.

_David G. Campbell_
David G. Campbell
United States District Judge